United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

J&J SPORTS PRODUCTIONS, INC.,

    Plaintiff,

v.

NARCISO MAGAT, individually and d/b/a MAGAT'S ASIAN GROCERY & TRADING, a/k/a MAGAT ASIAN GROCERIES,

    Defendants.
                                 /

No. C 11-01149 WHA

**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND ATTORNEY'S FEES AND DENYING REQUEST FOR ENHANCED DAMAGES**

## INTRODUCTION

In this action for damages resulting from the unlawful interception and intentional exhibition of a sporting program broadcast, plaintiff moves for default judgment. For the following reasons, the motion is **GRANTED**.

## STATEMENT

Plaintiff J&J Sports Productions, Inc. is a California corporation which owned the exclusive nationwide commercial distribution rights to *"The Event": The Manny Pacquiao v. Joshua Clottey, WBO Welterweight Championship Fight Program* (Compl. ¶ 3). The program included the main fight between Manny Pacquiao and Joshua Clottey as well as preliminary "undercard" bouts (Gagliardi Decl. 3). On March 13, 2010, investigator Gary Gravelyn observed the unlawful exhibition of the program at Magat's Asian Grocery & Trading, which is owned by defendant Narisco Magat (*id.* at 2–3).

In his declaration, Investigator Gravelyn reported seeing one television set, and described its size and location. He also circled that a cable box "was not" visible and that the establishment "does not" have a satellite dish. He described Magat's as having a capacity of approximately 75 people. No cover charge was required to enter. During the two minutes he was there, Gravelyn conducted three headcounts. The first two counted 21 people, and the third counted 23.

Plaintiff commenced this action in March 2011. In May 2011, defendant moved to quash service of summons. This motion was denied (Dkt. Nos. 22, 24). Defendants provided no other answer to plaintiff's complaint. In August, plaintiff filed a request for entry of default with the Clerk, and default was entered by the Clerk (Dkt. Nos. 25–26).

Plaintiff now seeks entry of default judgment granting the following relief: (1) $10,000 in statutory damages for violation of 47 U.S.C. 605; (2) enhanced statutory damages and attorney's fees for violation of 47 U.S.C. 605; and (3) $1800 in damages for conversion under Cal. Civ. Code § 3336. Defendants did not appear at the hearing held on September 29.

**ANALYSIS**

FRCP 55(b)(2) permits a court, following an entry of default, to enter default judgment against a defendant. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In considering whether default judgment is appropriate, the following factors are considered:

> (1) [T]he possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

**1.    MERITS OF SUBSTANTIVE CLAIMS AND SUFFICIENCY OF THE COMPLAINT.**

After entry of default, all well-pleaded factual allegations in the complaint are taken as true, except as to the amount of damages. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). The merits of plaintiff's substantive claims and the sufficiency of the complaint are thus considered together.

2

In his declaration, Inspector Gravelyn reported observing "Pacquiao Keys to Victory" as well as a "Lederman card displaying fighters Castillo v. Gomez & their picture" on the single nineteen-inch television in Magat's (Gravelyn Decl. 1). "Pacquiao Keys to Victory," however, is not the allegedly wrongfully broadcast program identified in plaintiff's complaint, declarations, and application for default judgment. No explanation is offered for the discrepancy in names listed in Gravelyn's affidavit and elsewhere in plaintiff's briefing. In his affidavit, the president of J&J alleges that Jose Luis Castillo and Alfonso Gomez participated in an early bout leading up to "The Event" (Gagliardi Decl. 2–3). Despite this inconsistency, the facts in the complaint are adequately well-pled to support an entry of default judgment, but not to support the full amount of damages plaintiff requests.

### A. Statutory Damages.

The Federal Communications Act, 47 U.S.C. Section 605, prohibits "receiving . . . any interstate or foreign communication by wire or radio . . . except through authorized channels of transmission or reception." Under Section 605(e)(3)(C)(i)(II), damages for each violation are set at a minimum of $1,000 and a maximum of $10,000.

The Cable and Television Consumer Protection Act, 47 U.S.C. 553, prohibits "intercept[ing] or receiv[ing] or assisting in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator." Under Section 553(c)(3)(A)(ii), damages for each violation are awarded a minimum of $250 and a maximum of $10,000.

Section 605 applies to satellite television, while Section 553 applies to cable television. *Kingvision Pay-Per-View Ltd. v. Lake Alice Bar*, 168 F.3d 347, 349 n. 2 (9th Cir. 1999). While plaintiff's complaint alleges a violation of Section 553 (Compl. ¶¶ 18–22), its application for default judgment only alleges a violation of Section 605, and calculates damages based on Section 605 (Br. 10–11).

Plaintiff alleges that it "cannot determine the precise means that the Defendant used to receive the *Program* unlawfully" but that it "should not be prejudiced because it cannot isolate the precise means of signal transmission." The only reason plaintiff gives for why damages

3

1  should be calculated under Section 605 is that "it is inherently reasonable in this instance where
2  the Defendant has placed itself in default for failing to answer or otherwise respond" (*id.* at 10).
3  This boilerplate language is identical to reasoning given by plaintiff in a previous default
4  judgment action before the undersigned judge. *J&J Sports Prods., Inc. v. Ro*, No. C 09-02860
5  WHA, 2010 WL 668065, at *3 (N.D. Cal. Feb. 19, 2010) (Alsup, J.). In relying on it, plaintiff
6  fails to account for the fact that Investigator Gravelyn, in his affidavit, noted that Magat's *did not*
7  have a satellite dish (Gravelyn Decl. 1). Plaintiff fails to offer *any* reason why statutory damages
8  should be calculated under Section 605 — the statute with the higher minimum award — instead
9  of Section 553. Defendants' alleged violation therefore will be analyzed under Section 553.

10  In support of its request for $10,000 in statutory damages, plaintiff's memorandum refers
11  to several decisions in other districts that granted larger awards, arguing that "even where the
12  violations do not appear particularly egregious, maximum statutory damages may be awarded"
13  (Br. 16). In most of the decisions plaintiff cites, however, the damages awarded were
14  substantially reduced from the amount requested due to the "small impact" of the defendants'
15  actions (*id.* at 14–15). Plaintiff offers no other reason why it should be granted maximum
16  statutory damages. Accordingly, this order awards $250 in statutory damages under Section 553.

### B. Enhanced Damages.

18  Plaintiff also requests enhanced damages of up to $100,000 pursuant to
19  Section 605(e)(3)(C)(ii). The relevant provision of Section 553 allows for a maximum enhanced
20  damage award of $50,000. The court of appeals has not set forth a specific set of factors to
21  determine the appropriate amounts of such enhancements. As a result, district courts consider
22  different factors to determine culpability and achieve proper compensation and deterrence.
23  These factors include "use of cover charge, increase in food price during programming, presence
24  of advertisement, number of patrons, number of televisions used, and impact of the offender's
25  conduct on the claimant. Repeated violations may also justify enhanced damages." *J&J Sports*
26  *Prods., Inc. v. Concepcion*, No. C 10-05092 WHA, 2011 WL 2220101, at *4 (N.D. Cal.
27  June 7, 2011).

4

1    There was no cover charge to enter Magat's, and approximately twenty patrons watched
2 the program on a single nineteen-inch television. Plaintiff does not allege that defendants
3 increased the price of food during the programming, nor that they used any advertisement.
4 Plaintiff also does not allege that defendants are repeat offenders.

5    Plaintiff offers a panoply of examples from other districts of how large awards of
6 enhanced damages have been calculated. Plaintiff has failed, however, to allege facts that
7 would inform a balancing of the factors that are frequently considered within this district.
8 Accordingly, plaintiff's request for enhanced statutory damages is **DENIED**.

### C.  Conversion.

A claim for conversion in California has three elements: "ownership or right to possession of property, wrongful disposition of the property right and damages." *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir. 1992). Plaintiff purchased the licensing rights to the program at issue. Defendants broadcast the program without paying the required licensing fee, and plaintiff suffered damages by being denied this fee. According to the affidavit by J&J's president, Joseph Gagliardi, the amount that defendant — a commercial establishment with a maximum occupancy of 75 — would have been required to pay for a proper sublicensing agreement was $1,800 (Gagliardi Decl. 3). Accordingly, this order awards $1,800 for the conversion claim.

### D.  Attorney's Fees and Costs.

Plaintiff requests attorney's fees and costs pursuant to Section 605 (Br. 10). As discussed above, this order declines to use Section 605 in its analysis due to the lack of evidence as to the means used to intercept the broadcast. Under Section 605, an award of attorney's fees is mandatory, but under Section 553, it is not.

Plaintiff requests $3,345.60 in attorney's fees. Plaintiff's attorney submitted a sworn declaration including supporting documents detailing rates and hours worked. Awarding attorney's fees under Section 553, however, is discretionary. The amount requested by plaintiff's attorney is excessive in light of the work performed considering the boilerplate language recycled from previous filings. Plaintiff's attorney also bills for six hours of work

5

done by a "research attorney" at $300 an hour yet his firm routinely files these sorts of claims and extensive research would not be necessary. Accordingly, this order grants $2,500 in attorney's fees.

Plaintiff also requests $1,049.75 in costs. Of this amount, $600 is attributed to "investigative costs." Inspector Gravelyn, in his declaration, reported spending fewer than five minutes investigating the unauthorized broadcast at Magat's (Gravelyn Decl. 2–3). Plaintiff offers nothing to explain how $600 in costs could be incurred by such a brief investigation. Accordingly, plaintiff is granted $449.75 in costs.

### 2. REMAINDER OF THE *EITEL* FACTORS.

The remainder of the *Eitel* factors favor entering a default judgment in favor of plaintiff. If this motion is not granted, plaintiff will be left without a remedy or means to prevent defendants' continued delinquency. Defendants made no answer to the complaint other than an unsuccessful motion to quash service of summons, so there is no dispute over material facts. There is no evidence that defendants' failure to respond was the result of excusable neglect.

A large sum of money at stake would disfavor default judgment. *See Eitel*, 782 F.2d at 1472 (stating that a three million dollar judgment at stake, considered in the light of the parties' dispute as to material facts, supported the court's decision not to enter default judgment). The declaration of Attorney Riley requests damages totaling $111,800. As discussed above, this order declines to award the requested amount. The combined award for attorney's fees, costs, statutory and conversion damages will be $4,999.75. This amount does not disfavor granting default judgment.

Finally, although federal policy does favor a decision on the merits, Rule 55(b) allows entry of default judgment in situations such as this, where the defendant has refused to litigate. On balance, the *Eitel* factors weigh in favor of granting default judgment.

### CONCLUSION

For the reasons stated above, plaintiff's motions for default judgment and for attorney's fees and costs are **GRANTED**. Plaintiff's request for enhanced statutory damages is **DENIED**. Plaintiff may recover $250 in statutory damages, $1,800 in damages for conversion, $2,500 in

attorney's fees, and $449.75 in costs for a total of $4,999.75.  Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

Dated:  October 12, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE